A. M. PAXTON et al. *v.* A. H. ARCHER et al.

Suit on Official Bond by Taxpayer — Code of 1871, Section 1386.

Under the provisions of section 1386 of the Code of 1871, the taxpayers of a county are authorized to bring suits in their own name on the official bond of a member of the board of supervisors to recover money illegally appropriated.[1]

Same — Form of Action — Pleading.

The particular form by which the name of a taxpayer who causes suit to be brought is made to appear in the suit, is not material.

Declaration — Averment of Breach.

A declaration upon a bond should set it forth and show how it was broken.[2]

Same — Form — Code of 1880, Section 1536.

A declaration containing sufficient matter of substance for the court to proceed upon the merits is good. Under section 1536 of the Code of 1880 it is no objection to maintaining any action that the form thereof should have been different.

A. M. Paxton and a number of others, taxpayers of Warren county, brought suit in the Circuit Court of Warren county against A. H. Archer, a member of the board of supervisors of said county, and the sureties on his official bond, as such, to recover the sum of

---

[1]

"If any board of supervisors shall appropriate any money to any object, not authorized by law, the members of such board shall be liable personally, for such sum of money, to be recovered, by suit, in the name of their successors in office, or in the name of any person who is a taxpayer, who will sue for the use of the board of supervisors of their county, and who shall be liable for costs in such case; but any member of the board of supervisors may be discharged from liability, in such suit, by plea or proof that he voted against such unauthorized appropriation of money." Code of 1871, sec. 1386; Code of 1880, sec. 2177; Code of 1892, sec. 325; Code of 1906, sec. 346.

Under sec. 1386, Code 1871, any taxpayer may bring an action against a member of the board of supervisors for the appropriation by the board of money to objects not authorized by law, and the action may be upon his bond required by the Act of 1876 (Laws, p. 46), for the faithful performance of duty. Paxton *v.* Baum, 59 Miss. 531.

Where members of the board of supervisors, in making appropriations for work on public roads, are advised and honestly believe that *circumstances*

$2,000, the penalty of the bond, for appropriating the money belonging to the county for illegal purposes. Their suit was dismissed and they filed their motion to set aside the order dismissing the suit and asked leave to file an amended declaration in the following form: "The amended declaration of the plaintiffs who sue for the use of the board of supervisors of Warren county in the name and by the authority of the following named citizens and taxpayers of said county, to wit: A. M. Paxton, S. S. Booth, H. Shannon, Ben Folkes, J. E. Whitaker," and a number of others. The declaration sets out the election and qualification of the defendant, Archer, as a member of the board of supervisors, and his entering upon the duties of such office, and the execution of the bond, and assigns a number of breaches of the bond.

existed, which existing, would authorize the appropriation, they are not personally liable for the money so appropriated, although mistaken in such belief. Paxton v. Arthur, 60 Miss. 832.

To an action on a supersedeas bond, the defendant pleaded general performance, and the plaintiff replied and assigned as a breach, "that the defendant did not prosecute his said supersedeas with effect, nor has he well and truly paid," etc., but did not aver that any supercedeas had ever issued, and there was a demurrer to the replication for that omission. *Held,* that in assigning the breach of a bond, the plaintiff must state all that is necessary to give him a cause of action with particularity, as to how the breach occurred; and that the issuance of the supersedeas was material, and by affidavit, does not apply in an action on a bond to secure the carrying should have been averred. Wharton v. Porter, 10 S. & M. 305.

2

If the condition of a bond be for the performance of one of two alternative covenants, in assigning a breach thereof, the performance of each and all the covenants should be negatived. Shaefer v. Minor, 1 How. 218.

In declaring on a contract, which is not sufficiently explicit in itself, and where its validity depends upon extrinsic matters, either expressly referred to by, or necessarily arising out of, the contract, the extrinsic matters must be supplied by proper averments in the declaration. Rileys' Admr. v. Vanhouten, 4 How. 428.

A bill alleging a breach of an official bond by failure "to collect and pay collected." Adams v. Conner, 19 So. 198.

Code 1892, sec. 1801, entitling one suing on an account to prove the items over" money, sufficiently alleges a breach for failure to pay over "money out of a contract for supplies. American Surety Co. v. United States, 76 Miss. 289; 24 So. 388.

"In actions upon bonds, with a condition, the plaintiff shall in his declaration, state the condition substantially, and assign distinctly, all the

Statement of the Case.

The court overruled the motion to set aside the order dismissing the suit and refused to allow plaintiffs to file their amended declaration.

From that judgment plaintiffs appeal.

Appealed from Circuit Court, Warren county, Upton M. Young, Judge.

Reversed and remanded, November 7, 1881.

*Attorneys for appellant, Cowan & McCabe.*

*Attorneys for appellee, Buck & Clark, M. Marshall, and H. F. Simrall.*

breaches for which he seeks a recovery, and at the trial, no evidence shall be given of any breach not so assigned." Code of 1871, sec. 584; Code of 1880, sec. 1542; Code of 1892, sec. 683; Code of 1906, sec. 736.

"The declaration shall contain a statement of the facts constituting the cause of action, in ordinary and concise language, without repetition, and if it contain sufficient matter of substance for the court to proceed upon the merits of the case, it shall be no objection to maintaining any action that the form thereof should have been different." Code of 1880, sec. 1536; Code of 1892, sec. 671; Code of 1906, sec. 729.

Under art. 78, p. 491, Code 1857, a declaration containing sufficient matter of substance for the court to proceed upon the merits, is good, and, after plea in bar, issue thereon and a demurrer to the evidence, it is too late to raise a mere technical objection to the declaration, as that in an action for services performed a promise to pay therefor is not alleged. Jordan *v.* Foxworth, 48 Miss. 607.

Since all forms of action are abolished in this State, a declaration need only state, in concise and intelligible language, sufficient matter of substance to show that plaintiff has a meritorious case. Gibson Mfg. Co. *v.* Meek, 71 Miss. 614; 15 So. 789.

Where a declaration shows, though in a general way, a cause of action, but the allegations are indefinite or uncertain, so that the precise nature of the complaint is not apparent, the remedy is not by demurrer, but by motion under sec. 704, Code 1892, to make the pleading more definite. Jones *v.* Millsaps, 71 Miss. 10; 14 So. 440.

Where the absence of an allegation would render a declaration demurrable, then the allegation must be proved, unless its truth be admitted. Railroad Co. *v.* Provine, 61 Miss. 288.

In declaring upon an account stated, it is not necessary to set forth the subject matter of the original debt. McCall *v.* Nave, 52 Miss. 494.

Where damages are by statute a legal incident to recovery, they need not be specially claimed. State *v.* Lewenthal, 55 Miss. 589.

Brief of Cowan & McCabe:

A discussion of the main question may be somewhat simplified and perhaps abridged by subdividing it into the two heads which naturally suggest themselves, viz: the power of the revenue agent to sue, and the power of the taxpayers to sue.

1. It is extremely doubtful whether the authority which has been cited in favor of the power of the revenue agent to bring the suit is sufficient to maintain it, and his authority may be therefore said to admit of grave denial. We shall leave the question for the court to decide upon the authority cited, without comment, except to say that if the third section of the act cited is independent of the section which precedes it, and is in no way limited or restricted by it, that the authority undoubtedly exists; but that if on the other hand it is not independent of said preceding section, but is limited and restricted by it, there is little doubt that the authority is wanting.

2. But whatever may be said of the authority of the revenue agent, there certainly remains no doubt, under the provisions of the statute, of the authority of the taxpayers to sue. This authority may be evolved in two methods: First, out of section 1386, Code 1871, and the Act of April 4, 1876; second, out of Act of April 4, 1876, and sections 311 and 1752, Code 1871.

1. It was objected on argument in the court below that the authorities cited in support of the first method did not support. The argument was that the authority of the taxpayer to sue was purely statutory; and that the very statute which gave him that authority had limited it to a suit against the member *personally,* and not on his bond, and to a suit in *his own name* and not to one in the name of the State. A moment's reflection will teach us that the last objection is dependent entirely upon the first. If the right of the taxpayer to sue on the bond exists at all, it follows as a necessary consequence that he can sue *in the name of the State,* for the reason that the State is the payee in the bond, and must therefore be made the nominal plaintiff. This is the reason of the case; but the statute quoted above is stronger and better. It declares that "all official bonds shall be made payable to the State of Mississippi and shall be put in suit in the name of the State, for the use and benefit of any person aggrieved by the breach thereof." There is certainly nothing in the last objection.

As to the first objection, we admit that the right of the taxpayer to sue is statutory, but we deny that the right is limited as contended for by appellees to a suit against the individual members of the board personally, and that it does not extend to a suit on his bond.  The argument in support of this objection is based on the use of the word "personally" appearing in the statute, section 1386, Code 1871.  Its fallacy lies in supposing that the word is used there as a word of limitation.  Had all the statutes cited been in force when this one was enacted, or had they and it been enacted simultaneously, the argument would then be plausible, perhaps conclusive.  But at the time this section was enacted, the Act of April 4, 1876, was not in force or thought of and the individual members of the board were not required to give bond, and to have enacted a law limiting the taxpayer in his right to sue *personally* in contradistinction to, on the bond, at that time would have been both senseless and absurd.  The word "personally" has no such meaning as that contended for by appellees.  The primary object of the section was to make the members of the board of supervisors liable in their individual capacity, to an object not authorized by law, and now that the bond is required of them the very same section would fix the liability of the members on the bond.  The authority of the taxpayer to sue and establish the liability fixed by this section was added as a secondary intention.

All statutes in *pardi materia* must be taken and construed together, the parts of each adjusted to the other in such a manner as to form a perfect and harmonious whole.  Adopting this rule of construction we will have little trouble in evolving the right of the taxpayer out of section 1386, Code 1871, and the Act of April 4, 1876, both of which have been quoted above.  Section 1386 declares an indebtedness due from the individual members of the board of supervisors to the county, in the State, of the case put there, and authorizes any taxpayer to collect the same by suit.  The purpose, and the only purpose, of the Act of April 4, 1876, was to provide a security for the payment of this indebtedness fixed by section 1386.  It does not even tell us what shall be the condition of the bond, to whom it shall be payable, or what shall constitute a breach of it, but leaves it for us to look into the general law of the State, of which it is now made a part, to ascertain and determine these.  It is made payable to the State,

it is conditioned for a faithful performance of the duties of the office, and an appropriation of money to an object not authorized by law is a breach of it. The liability to the county arises just as it arose before, and the method of enforcing it remains identically the same, except that what before was a personal liability has been enlarged into one on the bond, and what before was authority to sue personally has been enlarged into authority to sue on the bond. The same section of the Code which fixed the personal liability of the members authorizes the taxpayer to enforce it. If by the force of subsequent legislation, the personal liability of the member has been enlarged into one on a bond, the authority of the taxpayer to enforce that personal liability has also been enlarged to an authority to enforce it on the bond.

The Act of April 4, requiring the execution of the bond, did not abolish the right of the taxpayer to sue, but left that right existing as it had existed before. If then, his status in this record remains unchanged by that act, and he can still sue to collect the debt, what possible legal objection can there be to this proceeding on the bond for that purpose? The right to collect the debt, by suit, carries with it the right to make use of the security, if need be, for that purpose. It is trifling with common sense as well as law to say that the law has clothed the taxpayer with authority to sue and collect the debt, but it has not provided him with any of the means, methods, or appliances necessary to that end. The law never does things piecemeal.

If the taxpayers cannot sue, it becomes highly important to know who can. If they are debarred from bringing this suit for the reasons suggested, that there is no express authority for it, the district attorney of the county, and the board of supervisors are likewise debarred, and for the very same reason. The district attorney is the law officer of the county, but he has declined to hold the request of the grand jury, or to lend his authority, in aid of the taxpayers, and there is no necessity of looking for redress for the county in that direction. But suppose he should think better of the matter and desire to bring the suit, he would find himself without any express authority to do so, and according to the argument of appellees he would be unable. The board of supervisors are the general financial agents of the county, but here they are all interested and it would be idle to expect them to

sue themselves. But suppose they should grow virtuous and, like the defendant, Baum, should desire officially to sue themselves individually, would not their efforts in that direction prove abortive? The very same section of the Code which gives the taxpayer authority to sue gives it to the board of supervisors and in precisely the same language; hence their authority is co-equal and co-extensive. If the taxpayer has no authority to sue, then the board of supervisors have none, and the county is without remedy. The strict, and I may say illiberal, construction contended for by appellees leaves the county with a right but without any remedy to enforce it; the *reductio ad absurdum* of the law.

2. The Act of April 4, 1876, requiring of Appellee Arthur the bond here sued on, designed that bond as a special protection to the county, to afford it a means of indemnity against any wrongful official act, on his part resulting in damage, and declared that the remedies on it should be the same as provided by law on other official bonds. The court will mark the language: it is *remedies,* not *remedy.* The Act of April 4, 1876, looked out over the field of existing legislation and by positive enactment adopted all the remedies, on official bonds, known to the law, and made them applicable to this bond. Every remedy provided by law on any other official bond, is by the Act of April 4, 1876, adopted and made applicable to this bond. There is no remedy provided by law on any other official bond, that is not by said act, made equally applicable to this bond. It is fair to say that all the remedies existing at the time of the passage of said act on the official bond of the assessor or collector of taxes was adopted by said act and made applicable to the bond here sued on. These two officials are very important personages in the eyes of the law, and, like the board of supervisors, are clothed with some very urgent duties connected, immediately connected, with the financial affairs of the county. Their bonds, like the bonds of the members of the board of supervisors, are designed peculiarly for the protection of the county, and if the Legislature can be said to have any particular official bonds in view when the Act of April 4th was enacted, it was the bonds of the assessor and collector of taxes for the county, whose attitutde from a financial standpoint is in such great analogy to the members of the board of supervisors. We repeat that the Act of April 4, 1876, gave to the county, on the bond required by it, the

same remedies which existed at the time of the passage of that act, on the official bonds of the assessor and tax-collector. The remedy existing at that time on the official bonds of these two officers was, as will be seen by reference to section 1752, by suit in the name of the State of Mississippi, put in motion by any taxpayer of the county, who would become responsible for the costs.

We submit that the judgment dismissing this suit is wrong and ought to be reversed.

Brief of Buck & Clark:

* * * The case seems to stand entirely upon the provisions of that section of the Code of 1871 which make the members of boards of supervisors liable for moneys illegally appropriated. See § 1386, Code 1871; § 2177, Code 1880.

We will assume for the moment that the liability created by this section is enforceable against the board of supervisors, only observing that the bond in this case was given under the Act of 1876, which does *not* declare, as does the Code of 1880 (section 2132), that "such bond shall be a security for any illegal act of such member, * * * and recovery thereon may be had by the county for any injury by such illegal act."

By *whom*, and *how* then, does the statute say this liability shall be enforced? It says that the money thus illegally appropriated is "to be recovered by suit:

1. "In the name of their successors in office."

2. "Or in the name of any person who is a taxpayer and who will sue for the use of the board of supervisors of his county, and who shall be liable for costs in such case."

Waving the question whether where the board of supervisous brings the action, it is necessary or proper to declare on the bond in the name of the State for their use and also the further question whether an existing board can sue one of its members, it is manifest that *no* suit in which the board of supervisors is the real plaintiff liable for costs, can be brought, except upon their authority, especially by private counsel who act under "employment" of others and who are in no way subject to their control or direction or under any liability to them for their conduct. If then, this action brought by "the State of Mississippi who sues for the use of Warren county, plaintiff," can be regarded as, upon its

face, the suit of the board of supervisors of Warren county, it was shown below that it was being prosecuted without their authority—was, in fact, *not* their suit, and was, therefore, properly dismissed. If (in view of the fact that the suit is "for the use of Warren county," instead of "for the use of·the board of supervisors of Warren county," as by section 2175, Code 1880, suits by counties are directed to be brought), it can be contended that the *State* is really the plaintiff, then the action is equally unauthorized, as nobody but the Attorney-General or District-Attorney is authorized to prosecute for the State. See as to the latter, section 256 of the Code of 1880, by which it is made his duty "to appear and prosecute for the State in their respective districts in all criminal prosecutions, and *in all civil cases* in which the State or any county, etc., may be interested."

The only other suit authorized by this section, § 1386, Code 1871, which we are considering, is one *"in the name* of any person who is a taxpayer and who will sue for the use of the board of supervisors of his county, and who shall be liable for the costs."

Driven in the argument below from every ground which they assumed as authorizing them to maintain the action as originally brought, and after judgment that the suit was being prosecuted without due warrant on their part and must be dismissed, counsel moved the court to set aside the judgment of dismissal and to allow them "to file an amended declaration and to insert the names of the citizens and taxpayers who, it appears by said answer (to the rule), have authorized the prosecution of this suit in such manner as to show that they authorized and are prosecuting the same."

This was, in effect, nothing more than a proposition to allow the declaration to be so amended as to show *on its face* the same facts which had been set up by their answer to the rule. With the motion was offered an amended declaration, which runs as follows:

"The State of Mississippi, Use Board of Supervisors of Warren County *v.* A. H. Arthur, et al.

"The amended declaration of *the plaintiffs* who sue for the use of the Board of Supervisors of Warren County, in the name and by the authority of the following named taxpayers of said county, viz:" (naming them).

We are now to consider: 1, whether this amendment under the action is one "in the name of * * * a taxpayer

\*   \*   \*    responsible for costs," so as to bring it within the terms of section 1386; and, 2, if it did, whether it was error to refuse to allow it?

We think it clear it did not make such an action. Without changing its legal effect at all, the language of the declaration may be transposed thus: "In the name and by the authority of the following named taxpayers of Warren county, viz: (naming them), the State of Mississippi, plaintiff, brings this action for the use of the board of supervisors of said county and complains," etc. Or thus:

"The State of Mississippi, plaintiff, brings this action in the name and by the authority of the following named taxpayers of Warren county (naming them), and, for the use of the board of supervisors, complains," etc.

We are thus presented with an altogether original and anomalous form of action in which the plaintiff sues in the name and by authority of another person. Whether we regard the State or the board of supervisors as the plaintiff is matter of indifference; the action is, by confession of the declaration, not in the name or by the authority of either, but in the name and by the authority of certain persons who are not plaintiffs. What would be thought of a declaration which should declare that "John Doe, the plaintiff, in the name and by the authority of John Smith, complains of Richard Roe, defendant," etc.? And how long would such an action stand when, in answer to a rule to show their warrant for prosecuting it, counsel should say, "We do not appear or prosecute by authority of John Doe, the plaintiff, but by the authority of John Smith?"

There are some things the very absurdity of which forbid serious argument, and this strikes us as one of them. The legal effect of the amended declaration is exactly that of the original; nothing has been added except to make the declaration show on its face what was shown by the answer to the rule, that the counsel purporting to represent the plaintiffs, did not really represent them, but others who are not in any legal sense parties to the action.

The amendment was in pursuance of and consistent with the motion for leave to make it, which was that the declaration might be made to show on its face that the action was *authorized* by cer-

tain taxpayers. It was also consistent with what seems to have been the careful purpose of these taxpayers throughout, not to put themselves in any attitude which would make them responsible for costs. We say "throughout," because that purpose has been adhered to even to the extent of attempting to bring this appeal here without a bond for costs. Unles the court feels authorized to invent, or rather to patent to counsel, an entirely new variety of action, this suit, by one person, in the name of another, for the use of a third, cannot be sustained. * * *

Brief of M. Marshall:

* * * As to the right of the taxpayer to sue in the name of the county: The argument tacitly concedes that such a right does not exist; for it will be observed that counsel, while contending for the right of a taxpayer of the county to sue on the bond, do not claim that such taxpayer can sue *in the name of the county.* In other words, all that is required by their argument is that such taxpayer can sue in his own name.

If I am correct in this, it follows as a logical and legal consequence that the court below was correct in sustaining the demurrer to their answer to the rule and dismissing the case. And the only question that would remain is upon the order denying them leave to file their amended declaration.

The right of the taxpayer to sue in his own name, it is argued, is to be found first in the Act of April 4, 1876. (See Acts of 1876, p. 46, and § 1386 of the Code of 1871, and 2 c, in the same Act of 1876, and §§ 311 and 1752 of said Code of 1871.)

The Act of April 4, 1876, which for the first time requires the members of the board of supervisors to give bond, provided by section 1, that such bond should be conditioned as the bonds of other county officers who are required by law to give bonds "and the remedies on which shall be as provided by law on other official bonds."

The condition of the bonds of all officers of this State as given in section 309 of the Code of 1871, is, that the officer "shall faithfully perform and discharge all the duties of the said office of * * * and all acts and things required by law as incident to the said office during his continuance therein. * * * But this provision shall be considered directory only.".

The remedies provided by law on official bonds were as follows:

1.  By section 311, Code 1871, "The bonds of all public officers in this State, and of all collectors, administrators, executors, and guardians, shall be made payable to the State of Mississippi, and shall be put in suit in the name of the State of Mississippi, for the use and benefit of any person injured by the breach thereof."

It is apparent that this section gives the right of action only to *the person injured.* That is to say, the person who has sustained the injury asserts his own demand for damages to be recovered by him for his own use and benefit to make him whole from the injury. This section has no application to such a case as the one at bar because here the taxpayer does not sue for money to be recovered by him for his injury. This section would authorize the State or county to sue for injury sustained by either one respectively by breach of the condition of the bond, and it would likewise authorize any individual, whether taxpayer or not, to maintain an action on the bond for any injury sustained thereby by him and for which he is entitled to compensation, but it does not authorize the one to sue on the bond for any injury sustained not by the plaintiff but by another.

If the demand was payable to the county the suit would be in the name of the county, and if the demand was payable to the individual the suit would be in his name.

This section 311 is the only law providing a general remedy upon other officers' bonds, and in my opinion it is the law referred to in the Act of 1876. But it is claimed that section 1752 is applicable and refers the right. That section is a provision specially applicable to assessors and collectors of taxes and the collection of the public revenue, and that promptly is a matter of such general importance that the statute (upon the same policy which induces suits by informers for infraction of the revenue laws) gives an action at the instance of any taxpayer. Why is such an action specially authorized in such a case, and no similar provisions made in other cases?

The same Code, 1871, section 117, requires a bond of the secretary of state, but it does not provide for a suit upon it by any taxpayer. By section 128, Code 1871, a bond is required of the auditor, but no action given therein to taxpayer. So, also, of the state treasurer, state printer, keeper of the capitol, sheriffs,

coroner and county treasurer, but by section 269 the action against the county treasurer is to be by the board of supervisors—showing that the point was not overlooked. By section 272, Code 1871, a bond is required of the county surveyor, but no such action is given, and so of constables and rangers.

The reason for conferring the power in one class of cases and in none of the others is obvious. It is because the enforcement of the tax against all persons and property is of such vital importance to the State, and so essential to an equal distribution of the burden of government, in which each taxpayer is directly interested, that a special provision is thought necessary in the cases only of a failure to assess or a failure to collect the tax.

It would be a sufficient answer to the claim that this section 1752 gives the power, that this case is not the case mentioned in and provided for by that statute. And to illustrate the correctness of my view of this statute it is only necessary to examine sections 270 and 271, Code 1871, in order to be convinced that the remedy by suit at the instance of the individual taxpayer does not even apply to all demands against assessors, collectors, or sheriffs, for by these sections, where they have collected the taxes, etc., the remedy is by the county, and none given to any taxpayer.
\* \* \*

Brief of H. F. Simrall:

The question presented by this appeal is whether taxpayers of Warren county (one or several), can bring a suit against a member of the board of supervisors, on his official bond, for the causes stated in the declaration, and a schedule thereto attached. The suit purports to be in the name of the State for the use of the county, against A. H. Arthur and his sureties. In response to a rule to show authority to bring the suit Messrs. Cowan & McCabe show that they were employed by A. M. Paxton and other taxpayers of the county. They also rely on authority from the financial agent of the State and a report of the grand jury.

First—It is primarily the duty of the district attorney to institute and prosecute any and all suits (civil). Code 1880, §§ 256, 257.

So, also, the board of supervisors may employ counsel in all civil cases in which the county is interested "to conduct the proceedings," etc. Code, § 2176.

Section 368 of the Code of 1880 makes it the duty of the county treasurer "to direct for all debts   *   *   *   due the county," etc.

In the case of Lowenthal v. State, 51 Miss. 650, the several provisions of the Code of 1871 on the subject were passed upon (which are substantially re-enacted in the present Code), and it was held that the county treasurer could not, in directing suit, pretermit the district attorney and employ special counsel. Such discretion is not lodged in the treasurer, but in the board of supervisors. The sum of the decision is that suit must be brought either by the district attorney or special counsel employed by the board of supervisors. See also State v. Cooper, 55 Miss. 625.

But the power of the taxpayers to employ counsel and sue on the bond is predicated by counsel for appellant, in sections 2132 and 2177. The court is respectfully requested to pause and carefully read these sections. The first treats of the "bond and its effect." The final clause is, "And such bond shall be a security for any illegal act of such member of the board of supervisors, and recovery thereon shall be had by the *county* for any illegal acts of such member for any injury," etc. Plainly the meaning is that the district attorney or special counsel employed by the board may bring suit for the use of the county, since that is the method of remedy provided, as we have seen by other provisions of the Code.

Turn now to section 2177, and a careful analysis will discover its intent and meaning to be that the *members* of the board may be sued and held liable *collectively* and *personally* for one single illegal act, namely, the appropriation of money to an object *not authorized by law,* and such suit may be brought by their successors in office, or in the name of any person who is a taxpayer "who will sue for the use of the county and who will be liable for costs," etc.

A special action grounded on the statute is conferred. In its essence it is a *qui tam* suit. The liability is on the entire membership of the board, who must be jointly sued; not on the bond, for there is no responsibility on the sureties created by this section, but the liability is purely *personal.* That the suit must be joint, including all, and not against each individual member, and that is a personal suit, is conclusively shown by the final clause of the section, viz: "But any member of the board may be discharged

from liability by plea and proof that he voted against such unauthorized appropriation."

The test of the liability of the members to this joint *qui tam* personal action is the object to which money was appropriated. The words are, "to any object not authorized by law."

To entitle the taxpayer to sue, the object of expenditure must be one contrary to law—something for which the board has no power to appropriate money—as if it should buy land and establish a race course, or a public park, or give a great and expensive festival for the public entertainment. These are objects not authorized by law.

But if, wantonly and negligently, the board should spend more money to erect a bridge or a jail than was necessary, for such reckless folly and extravagance the action would not lie, for the *object* was one authorized by law. But more than this, the action must on the face of the record disclose who is responsible for costs. The *name* of the taxpayer must be set out in the declaration as the party liable for costs, and he must be the plaintiff for the use of the county.

But counsel for appellant may rely on a provision of statute which in effect allows any person injured to sue as usee on an official bond. That applies where the bond is intended as security for individual rights as distinguishable from those that are public. The sheriff's bond is an indemnity to individuals whose money is in the hands of the officer, as money collected on execution. But where the bond relates to an indemnity for the public, in the discharge of duties which affect the public, for breaches of such bonds the public for injuries must sue.

The misappropriation of county funds is a *public* injury. The withholding of money collected for an individual is a private injury for which the individual may hold the sheriff and his sureties. The public does not participate in the injury.

The bond of the clerk of the court is for the indemnity of individuals who do business with that officer and who suffer by his misfeasance or nonfeasance. The individual who sues under section 2177 must be a taxpayer of the county; no other citizen of the county may sue. If not a taxpayer, the suit may be abated; he, like other private suitors, may be required to give security for costs. The bond of the members of the board is indemnity for

each one's conduct.   Each gives a separate bond for his good con-
duct.   Neither undertakes for the other.

It must not escape observation that the taxpayer cannot sue for
any other misconduct than the appropriation of money to an un-
lawful object.   For all other misconduct the suit must be by the
county on the bond.

Whilst it may be true that the county may sue on the bond for
every misconduct by the member, it is likewise true that the tax-
payer can only sue in one single instance, and that in the mode
already pointed out.

As to the policy and reason of section 2177, the Legislature
supposed that the public was amply protected by the bonds of the
members for all delinquencies except one, hence it provides that
for the gross abuse of power in one respect it would not rely on the
proper officials taking remedy on the bonds exclusively, but allowed
the individual taxpayer to represent the county in a *qui tam* per-
sonal suit against the members jointly, indicating how and for
what a member may be discharged.   The design was to put in
motion a remedy for such gross misconduct, if perchance the treas-
urer and district attorney or the board itself would not act.

I am brought to these conclusions, first, a suit cannot be brought
on the bond of a member of the board of supervisors by any other
counsel than the district attorney or special counsel employed by
the board.

Second, that section 2177 of the Code provides a special suit by
the taxpayer in one single instance, and that such suit must be in
the name of the taxpayer as such, who makes himself responsible
like a private suitor for the costs, and against the collective mem-
bership personally.

Third, the law does not permit a private citizen (a taxpayer)
to use the name of the State for the use of the county to sue for an
official delinquency, that duty being entrusted to official person-
ages and bodies.

And since this suit has been brought without proper authority,
the court did right in not permitting its further prosecution.

The right to bring the suit under authority of the revenue agent
as created by Acts of 1876 and 1880, was, as I understand, not
pressed in the Circuit Court.   It may be in this court.   What
collections this agent may make are defined by the first section of

each of these acts. It is perfectly plain that the matters of this suit are not embraced in that suit. His right of suit is founded on his duties as defined in the first section.

OPINION.—CAMPBELL, J.:

Without deciding any other question, we hold that the suit should not have been dismissed finally, but the order dismissing it should have been set aside, and the amended declaration tendered should have been allowed to be filed. It sufficiently shows that the suit is brought in the names of taxpayers, and the law makes them liable for costs. The object of the statute authorizing suit in the name of a taxpayer is to meet the case of unwillingness on the part of the board of supervisors to sue, and to permit a suit for the benefit of county by any taxpayer who will stand forth in behalf of the county and thereby incur liability for costs. The particular form by which the name of the taxpayer who causes suit to be instituted is made to appear as an actor in the suit, is not material. It would be more strict conformity to the statute and rules of pleading to declare in the name of the taxpayer, as suing for the use of the board of supervisors, and to set forth by proper averments the facts relied on to entitle the plaintiff to a recovery. The suit, being on a bond, should set it forth and show it was broken. All that is necessary is for the declaration to "contain sufficient matter of substance for the court to proceed upon the merits of the cause," and it is "no objection to maintaining any action that the form thereof should have been different." Code 1880, § 1536.

The amended declaration is sufficient with respect to parties plaintiff and understanding from the record and the argument of counsel, that it was rejected by the court below on account of its assumed insufficiency in this respect, we reverse the judgment dismissing the action, and set it aside, and grant leave to file the amended declaration, and remand the cause for further proceedings in the Circuit Court. The declaration will be subject to demurrer or plea, and we decide nothing hereby except as to the right of the taxpayers named in the declaration to be heard on the subject of their complaint in the manner in which they have presented themselves in the amended declaration.